UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Rodriguez A. Bembo,

        Plaintiff,

  v.

County of Niagara et al.,

        Defendants.

**Decision and Order**

13-CV-413V

---

## I. INTRODUCTION

Fact discovery for this case closed on May 1, 2015. The exchange of discovery between the parties would have included a June 28, 2011 radiology consultation report by Dr. Robert Lutnick ("Lutnick") and a February 29, 2012 radiology consultation report by Dr. Randall Loftus ("Loftus"). Expert discovery closed on September 15, 2015. Defendants—the County of Niagara along with Officer Benjamin Phillips, Officer Jeffrey Shawver, and Sergeant Jeffrey Kolbe—filed a motion for summary judgment on January 29, 2016. At oral argument for the summary-judgment motion, District Judge Lawrence J. Vilardo invited the parties to submit supplemental briefing on the legal question of whether the Loftus report, as a stand-alone medical report, could fend off defense expert opinions and raise a triable question of fact about injuries allegedly suffered by plaintiff Rodriguez Bembo ("Bembo").

In response to Judge Vilardo's invitation concerning a legal question, defendants have filed a motion (Dkt. No. 56) to compel additional factual discovery—specifically, speaking authorizations that would allow them to contact Lutnick and Loftus. On the face of the motion papers, defendants argue generically that Bembo has placed his medical condition at issue and that state

law generally allows post-discovery speaking authorizations. On a deeper level, however, defendants want to bolster their summary-judgment motion with further evidence that the Loftus report "contains an omission. He or she, whoever prepared the report, didn't clearly distinguish between the two films." (Dkt. No. 54 at 13.) Bembo opposes the motion on the grounds that fact discovery closed over a year before defendants filed the motion and that the discovery sought reaches beyond Judge Vilardo's invitation to address a legal question.

This Court has received a dispositive referral from Judge Vilardo under 28 U.S.C. § 636(b). (Dkt. No. 61.) The Court has deemed the motion to compel submitted on papers under Rule 78(b) of the Federal Rules of Civil Procedure ("FRCP"). For the reasons below, the Court denies[1] the motion.

II. BACKGROUND

This case concerns allegations of an excessive force incident at the Niagara County Jail on January 11, 2012. For purposes of the pending motion, the Court will skip a lot of factual details that will be more important to discuss when addressing defendants' summary-judgment motion. Briefly, Bembo alleges in his complaint that a dispute over improper pictures in his bunk led to a handcuffing and an application of excessive force to his wrists. From January 11, 2012 until his release in February 2, 2012, Bembo allegedly was refused medical care to address pain in his right wrist. Bembo eventually underwent surgery on his right wrist in April 2012 to alleviate symptoms that he was experiencing. The four claims in Bembo's complaint—deliberate indifference, excessive force, and both intentional and negligent infliction of emotional distress—all relate in some way to

---

[1] "Matters concerning discovery generally are considered 'nondispositive' of the litigation." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) (citations omitted).

the force allegedly used against Bembo on January 11, 2012 and the injuries that he asserts having suffered as a result.

The condition of Bembo's right wrist before and after January 11, 2012 has drawn considerable attention from the parties. Bembo has denied any injuries to his right wrist before January 11, 2012 (Dkt. No. 31-5 at 113), though he has acknowledged that he must have had a reason to undergo an x-ray on June 28, 2011, possibly soreness from working out (*id.* at 67). Bembo underwent x-rays on both June 28, 2011 and February 29, 2012. (Dkt. Nos. 31-27 at 2 and 31-28 at 2.) Lutnick prepared the radiology consultation report following the June 28, 2011 x-ray. Lutnick diagnosed a normal right wrist with unremarkable surrounding soft tissue. (Dkt. No. 42-8 at 2.) Loftus prepared the radiology consultation report following the February 29, 2012 x-ray. In his report, Loftus stated that a "[m]ild widening of the scapholunate interval is noted suggestive of possible underlying ligamentous injury. Minimal degenerative changes are noted at the radiocarpal joint. Slight deformity is noted at the scaphoid bone possibly representing old post traumatic change." (Dkt. No. 42-9 at 2.) Defendants' medical experts have a different view of Bembo's right wrist. Dr. Kevin Lanighan ("Lanighan") examined Bembo on April 29, 2015 and found that "it would seem quite clear that this individual [*i.e.*, Bembo] has radiographic evidence of pre-existing scapholunate ligament disruption. There is really no radiographic evidence of any new injury and the films from 2/29/12 appear to document similar changes as noted previously on 6/28/11. When asked directly about prior injuries he specifically denied any prior injuries or problems." (Dkt. No. 31-9 at 3.) Dr. Angelo DelBalso ("DelBalso") reviewed Bembo's x-rays on January 20, 2015 and concluded that "I feel it can be said with more than reasonable certainty that

3

Mr. Bembo had disruption of his scapholunate ligament at the time of his initial examination dated 6/28/11 and that the events of 1/11/12 did not change the nature of his injury. Likewise, the need for surgical intervention existed at the time of the initial study dated 6/28/11." (Dkt. No. 31-10 at 5.) The x-rays, the Lutnick and Loftus reports, the Lanighan examination, and the DelBalso review all occurred before fact discovery in this case closed on May 1, 2015 and expert discovery closed on September 15, 2015. (Dkt. No. 26.)

Bembo's right wrist became a subject of discussion at oral argument for the summary-judgment motion on June 13, 2016. At one point, Judge Vilardo asked defense counsel, "I've been looking at my notes, on the February 2012 x-ray report. And that says that it compares the 2012 x-ray with a 2011 x-ray done in June 2011, and it finds a slight widening of the scapholunate interval. Okay? Why isn't that enough to contest your expert's finding that the 2011 x-ray and the 2012 x-ray show essentially the same thing . . . ?" (Dkt. No. 54 at 9.) Among other conversation, defense counsel responded, "I believe because the x-ray report you just referenced doesn't get into the specificity that my expert radiologist did, and he actually took measurements and says here's what I see on the first film, here's what I see on the second film. And if anything, [on] the more recent-in-time film, he actually looks better, which was explained to me as, you know, it depended on how he was holding it . . . . [T]hey were stunned when they saw the 2011 x-ray report saying normal film." (*Id.* at 11–12.) Sensing that a proverbial "battle of the experts" loomed, Judge Vilardo then probed Bembo's counsel about any medical opinions or other information that would support Bembo's claims of right wrist injury beyond the Lutnick and Loftus reports in themselves. Bembo's counsel responded that Bembo was relying primarily on the reports. (*Id.* at

4

24.) The absence of plaintiff medical experts prompted Judge Vilardo to ask the parties for supplemental briefing on the following legal question:

> THE COURT: So, whether there's any case law that supports the plaintiff's claim that the prior—when—when two experts or one expert or five experts criticize a prior medical report and say the doctor just missed it, that the report in and of itself without any additional expert affidavit is enough to create an issue of fact on the topic on which the experts criticize.
>
> In other words, we don't have the usual battle of experts here where you put in an expert affidavit and they put in an expert affidavit, and I say I can't decide which expert's right.
>
> In this case, we've got a medical record, and we now have expert affidavits that say the doctor who did that medical record, who prepared that medical record got it wrong. And the question I have is: Does that necessarily create an issue of fact? Or do you need an expert affidavit on the other side saying, do you know what, he didn't get it wrong?

(*Id.* at 31–32.)

Bembo took a mixed approach in response to Judge Vilardo's invitation. Bembo filed a letter brief on June 28, 2016 addressing several related evidentiary issues. (Dkt. No. 51.) Bembo argued that medical records by themselves can create questions of fact to defeat summary judgment, partly because uncontroverted expert opinions do not automatically lead to summary judgment and partly because plaintiffs are not required to hire experts to support their own medical records.[2] Bembo argued further that medical records can support a claim of excessive force without the need of an expert, so long as the claim does not require an analysis of the standard of care that would reach beyond the understanding of a lay jury. Finally, Bembo asserted that his medical records—the Lutnick and Loftus reports in particular—are admissible at trial as

---

[2] Because the Court is not yet addressing the pending summary-judgment motion, it is not taking any position on the merits of Bembo's arguments. The Court here is only summarizing what Bembo did in response to Judge Vilardo's invitation.

5

business records.  As far as the Court can tell, then, Bembo answered Judge Vilardo's legal question with a fairly straightforward legal answer—until the bottom of the second-last page of the letter brief.  Toward the end of his letter brief, Bembo dropped a footnote that reads, "Dr. Robert Lutnick of Western New York MRI has been unavailable and/or out on vacation.  My office was informed that he will have documentation regarding the analysis of Plaintiff's right wrist as well as his regular practice of reviewing and recording findings next week (the week of 7/29/16).  Plaintiff's counsel will forward to the Court upon receipt." (Dkt. No. 51 at 4 n.1.)  The footnote might have been an attempt to explain why Bembo presented no expert affidavit in opposition to the summary-judgment motion.  Either way, the footnote reads as if Bembo intends to support the Lutnick and Loftus reports further through factual discovery that could have been provided before May 1, 2015 but was not.

Defendants responded to Judge Vilardo's invitation and to Bembo's footnote in two ways.  Defendants filed a reply brief on July 21, 2016 (Dkt. No. 58) criticizing Bembo's footnote and arguing that the Lutnick and Loftus reports would be inadmissible at trial under the best evidence rule.[3]  Defendants then proceeded to answer Judge Vilardo's legal question about whether *a* medical record by itself can suffice against *any* expert affidavits with an evidentiary analysis of whether the Loftus report in particular can suffice against *their* particular expert affidavits:

---

[3] *But see Gordon v. Kaleida Health*, 299 F.R.D. 380, 393 (W.D.N.Y. 2014) ("Federal Rule of Civil Procedure 56(c)(2) provides that, on summary judgment, '[a] party may object that the material cited to support or dispute a fact *cannot be presented in a form* that would be admissible in evidence,' and so should be excluded. (emphasis added.)  This Rule simply provides that the evidence must be capable of presentation in admissible form at the time of trial; it does not require that the materials be presented in an admissible form on summary judgment.").

> Here, Dr. Randall J. Loftus's February 29, 2012 radiology report does not give rise to a material issue of fact as to whether Plaintiff sustained a serious medical condition in that (1) it comports with Defendants' experts' opinions that the 2012 film shows a "mild" or "slight" widening as compared to the 2011 film and (2) fails to address, let alone refute, Defendants' experts' opinions regarding the absence of indicia for determining whether Plaintiff sustained a serious medical condition, including, the "existence of an injury that a reasonable doctor or patient would find important or worthy of treatment; the presence of a medical condition that significantly affects an individual's daily activity or the existence of chronic and substantial pain." *Tindal v Goord*, 530 F. Supp. 2d 465,466, citing *Chance v. Armstrong*, 143 F.3rd. 698, 702 (2nd. Cir.1998), internal quotations omitted.
>
> * * *
>
> Furthermore, Dr. Loftus's February 29, 2012 radiology report does not conflict with Defendants' experts' opinion and thus, raises no material issue of fact. Specifically, Dr. Loftus's radiology report, wherein he compared the February 29, 2012 films with the June 28, 2011 films, found that the widening depicted in the 2012 films, as compared to the 2011 films, was "slight".  Likewise, Defendants' radiology expert, Angelo DelBalso, M.D., found a "mild degree of widening" that "is not as pronounced as that on the study dated 6/28/11" and Defendants' orthopedic expert, Kevin W. Lanighan, M.D., opined that the February 29, 2012 x-ray films "showed less widening of Mr. Bembo's right scapholunate interval than was seen on his June 28, 2011 films."  In light of this, the aforementioned reports simply would not provide a reasonable jury any basis for finding in Plaintiff's favor.

(Dkt. No. 58 at 8–9 (footnotes omitted).)  Meanwhile, even before Bembo's letter brief and its footnote, defense counsel wrote to Bembo's counsel on June 24, 2016 seeking speaking authorizations that would allow her to approach Lutnick and Loftus.  "I intended to seek an affidavit from Dr. Loftus, confirming that his reference to a 'slight widening' was not intended to convey a new or exacerbated injury as compared to the 2011 film and further, that his finding of a 'slight widening' was synonymous with Dr. DelBalso's finding of a 'mild degree of widening'." (*Id.* at 2–3; *see also* Dkt. No. 58-3 at 2.)  In an email exchange that ensued, defense counsel recast as follows the legal question that Judge Vilardo had posed at oral argument:

> The judge questioned whether one could interpret Dr. Loftus' radiology report to infer that because the report was deemed a "comparison study" to the 2011 film, and Dr. Loftus noted that the 2012 film showed "slight widening", that what he meant was the 2012 film depicts a "slight widening" not seen on the 2011 film and that arguably, the incident at issue caused a new or exacerbated injury. I am assuming that when I speak with Dr. Loftus, he will clarify and confirm that he meant exactly what both Drs. DelBalso and Lanighan said, namely, that the widening observed in the 2012 film was not as pronounced as the widening seen in the earlier film. Dr. Lotfus used the term "slight" to explain that, whereas the others said "not as pronounced."

(Dkt. No. 58-4 at 2.) Bembo's counsel disagreed with the recasting of the legal question:

> That is *not* what is allowable in your reply. The judge was clear in court as he was in his text order issued thereafter. *"Counsel for defendants shall have until 7/6/2016 to respond to the additional legal authority submitted by plaintiff."* I did not address this issue in my letter brief because I was not instructed that I could or that the Court wanted to be advised on that issue.

(*Id.*)

Defendants filed the pending motion on July 5, 2016 to compel the speaking authorizations that they seek. In their "affidavit of law,"[4] defendants argue generally that "[b]y filing the instant lawsuit, affirmatively placing the medical condition of his right wrist in controversy, Plaintiff has waived the physician patient privilege regarding medical records regarding his wrist and Defendants are entitled to explore his medical condition in defending this suit." Defendants make no mention of Rule 16 and do not acknowledge that they are seeking discovery in the middle of proceedings for their own summary-judgment motion. Instead, defendants cite to New York state case law and to one federal district court case for the proposition that Bembo's "objection to providing the requested authorizations on the grounds that discovery has ended is without merit. As I am sure this Court is well aware, disclosure of

---

[4] "An affidavit must not contain legal arguments, but must contain factual and procedural background relevant to the motion it supports." W.D.N.Y. L.R. Civ. P. 7(a)(3).

speaking authorizations permitting Defense counsel to discuss Plaintiff's medical condition and treatment with his or her medical providers after paper discovery has concluded is wholly proper." (Dkt. No. 56-1 at 4.) Bembo opposes the motion for two reasons. Despite the footnote in his letter brief that the Court mentioned above, Bembo notes that discovery in the case is closed. Bembo also points out that, while oral argument for the summary-judgment motion did cover the interpretation of the February 29, 2012 x-ray, Judge Vilardo "did not request that defense counsel submit anything further regarding this issue . . . . The Court requested that Plaintiff respond to a legal question, not a factual one." (Dkt. No. 59 at 3–4.)

III.   DISCUSSION

Although defendants have placed the pending motion under Rule 37, they are not seeking "a disclosure required by Rule 26(a)," FRCP 37(a)(3)(A), nor are they trying to enforce the kind of request considered in FRCP 37(a)(3)(B) or (C). As for timing, Rule 37 "provides no deadline for the filing of a motion to compel. However, Courts have held that where a [moving party] is aware of the existence of documents before the close of discovery and issues discovery requests subsequent to the discovery deadline, the discovery requests should be denied." *In re Health Mgmt., Inc.*, No. CV 96-0889 (ADS), 1999 WL 33594132, at *5 (E.D.N.Y. Sept. 25, 1999) (citations omitted). Additionally, "Rule 37 does not establish a deadline for the filing of a motion to compel; rather, that deadline is prescribed by Rule 16, which requires the district court to establish a scheduling order limiting the time to file motions and complete discovery." *Casagrande v. Norm Bloom & Son, LLC*, No. 3:11-CV-1918 CSH, 2014 WL 5817562, at *2 (D. Conn. Nov. 10, 2014) (citations omitted); *see also Gucci Am., Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 139–40

(S.D.N.Y. 2011) ("Though Rule 37 does not establish time limits for such a motion, a party seeking to file a motion to compel after discovery has closed must similarly establish good cause. Where a party is aware of the existence of documents or other information before the close of discovery and propounds requests after the deadline has passed, those requests should be denied.") (citations omitted). Rule 37 thus cannot provide relief here on its own. The Court instead needs to look at whether any discovery can occur here under Rule 56, in the middle of a summary-judgment motion, or under Rule 16 if leave to reopen discovery would be appropriate. Mindful that the parties have not addressed Rules 56 or 16, and mindful that "judges are not obligated to do a party's work for him, searching *sua sponte* for issues that may be lurking in the penumbra of the motion papers," *Coons v. Indus. Knife Co.*, 620 F.3d 38, 44 (1st Cir. 2010) (internal quotation marks and citation omitted), the Court will assess how each rule affects the situation at hand.

### A. *Rule 56 and Reopening Discovery*

The circumstances under which discovery can occur in the middle of a summary-judgment motion are very limited. Under Rule 56(d), if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," then courts, in their discretion, can allow time to take additional discovery. Rule 56(d) will not apply to the pending motion because defendants are the moving party; they are seeking discovery that, in their view, would provide additional support for their own motion. Rule 56(e) is at least technically available to defendants; under that provision, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . give an opportunity to properly support or address the fact . . . ." That provision, however, does not address reopening closed discovery; on its face, it only allows parties, in a court's

discretion, to have another chance to scour the record to find support for a factual assertion. As seen from their correspondence to Bembo, defendants seek much more than a chance to scour the existing record. Defendants want to engage Lutnick and Loftus to bring them in line with the opinions that their medical experts have submitted about the June 28, 2011 and February 29, 2012 x-rays. Defendants' motive to engage Lutnick and Loftus is understandable[5]—Judge Vilardo at oral argument identified an apparent discrepancy between the two x-rays and wondered whether that discrepancy requires resolution by a jury. Nonetheless, defendants knew or should have known long before filing their summary-judgment motion that the discrepancy existed. Defendants have not explained why they could not have addressed the discrepancy earlier. Defendants also have not offered any legal authority for the proposition that summary-judgment movants can stop proceedings for their own motions midstream, to gather evidence that might reassure a skeptical judge. In short, "[t]he scheduled time for discovery was over, and a fully briefed motion for summary judgment was pending when the request to reopen was made. A reopening under those circumstances would seriously undermine the orderly scheduling of discovery and summary judgment motions." *Jackson v. Fed. Exp.*, 766 F.3d 189, 199 (2d Cir. 2014); *see also Chepak v. N.Y. City Health & Hosps. Corp.*, ___ Fed. App'x ___, No. 15-679, 2016 WL 1055780, at *1 (2d Cir. Mar. 17, 2016) (summary order) (affirming the rejection of a request for a subpoena where the plaintiff "sought the subpoena months after discovery had closed and after

---

[5] Defendants' motive is understandable but also somewhat ironic. Suppose that Loftus spoke with defendants and did exactly what they would hope—"confirm[] that his reference to a 'slight widening' was not intended to convey a new or exacerbated injury as compared to the 2011 film." (Dkt. No. 58 at 2–3.) Such a confirmation would depart from how the Loftus report reads on its face. Would the change from the Loftus report to the Loftus confirmation, and Loftus's reasons for it, in themselves create other questions of fact?

the summary judgment motion was fully briefed"); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 927–28 (2d Cir. 1985) ("Burlington had ample time in which to pursue the discovery that it now claims is essential . . . . A party who both fails to use the time available and takes no steps to seek more time until after a summary judgment motion has been filed need not be allowed more time for discovery absent a strong showing of need."). Rule 56 thus does not give defendants a path to the discovery that they seek.

### B. *Rule 16 and Reopening Discovery*

Defendants' only other path to reopening discovery runs through Rule 16. Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." "A party seeking to reopen discovery bears the burden of establishing good cause and discovery should not be extended when there was ample opportunity to pursue the evidence during discovery." *Spencer v. Int'l Shoppes, Inc.*, No. CV 06-2637 AKT, 2011 WL 3625582, at *1 (E.D.N.Y. Aug. 16, 2011) (citations omitted). "Several district courts have applied the following six-part test to analyze a request to reopen discovery: 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence." *Jacobs v. N.Y. City Dep't of Educ.*, No. 11CV5058MKBRML, 2015 WL 7568642, at *3–4 (E.D.N.Y. Nov. 24, 2015) (citations omitted). The above factors are not formulaic but are helpful in assessing defendants' motion. Some of the factors do weigh in defendants' favor. Trial is not imminent here, and any prejudice to Bembo would not appear to be significant. In contrast, Bembo does oppose the motion, defendants could

have tried to engage Lutnick and Loftus while discovery was open, and defendants could have foreseen Judge Vilardo's concern about the apparent discrepancy between the Lutnick and Loftus reports. As for the final factor, defendants hope that Loftus would fall in line with their experts but have no way to know for sure what would happen if they spoke to him or whether he would even agree to speak to them. *Cf. Gray v. Town of Darien*, 927 F.2d 69, 74 (2d Cir. 1991) (affirming summary judgment and rejecting an argument by the non-moving parties that "facts could have been developed to support their claim" if only discovery had been reopened); *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, No. 06CIV.2692KMWRLE, 2008 WL 4443828, at *16 n.23 (S.D.N.Y. Sept. 29, 2008) ("Plaintiff fails to demonstrate good cause for its failure to conduct discovery on this issue prior to the discovery cutoff date . . . . The Court will not reopen discovery on this issue at the summary judgment stage."). Under these circumstances, defendants have not shown good cause to disturb the discovery cutoff date of May 1, 2015.

The cases that defendants have cited in support of their motion do not change the above analysis. *Nicholas v. City of Binghamton*, No. 3:10-CV-1565, 2013 WL 773328 (N.D.N.Y. Feb. 28, 2013), is not helpful because it does not explain what circumstances warranted the granting of speaking authorizations after the close of discovery. *Nicholas* also points to a regulation that defendants failed to explore while discovery was open. Specifically, defendants could have sought an order from the Court under 45 C.F.R. § 164.512(e)(1)(i) that would have permitted, though not required, Lutnick and Loftus to disclose medical information without the need for an authorization from Bembo. As for defendants' principal state case, *Arons v. Jutkowitz*, 880 N.E.2d 831 (N.Y. 2007), defendants have not explained why state case law should override the Federal

13

Rules of Civil Procedure. To be clear, the question under the circumstances of this case is not whether the Court generally should allow for speaking authorizations or an appropriate order under 45 C.F.R. § 164.512(e)(1)(i); the general propriety of that kind of discovery is not squarely before the Court. The question here is whether the Court should halt consideration of a fully briefed summary-judgment motion, filed after the close of discovery, because the moving party might get a helpful answer to a question that arose during oral argument. As events here have unfolded, the answer is no.

## IV.   CONCLUSION

For all of the above reasons, the Court denies defendants' motion to compel (Dkt. No. 56). Discovery remains closed, and the Court will not accept any more factual submissions from either side. The Court will proceed to prepare a Report and Recommendation for Judge Vilardo concerning defendants' summary-judgment motion.

SO ORDERED.

/s Hugh B. Scott
HONORABLE HUGH B. SCOTT
UNITED STATES MAGISTRATE JUDGE

DATED: August 9, 2016