UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RODRIGUEZ A. BEMBO,

                 Plaintiff,

     v.

COUNTY OF NIAGARA, OFFICER PHILLIPS,
OFFICER SHAVER, and SERGEANT KOLBE,

                 Defendants.
_____

DECISION AND ORDER
13-CV-413

       This case was filed in April 2013, Docket Item 1, and discovery was completed about two years later, *see* Docket Items 26, 28. In March 2017, this Court adopted Magistrate Judge Hugh B. Scott's Report and Recommendation to grant in part and deny in part the defendants' motion for summary judgment. Docket Item 65. At a conference before Judge Scott on April 12, 2017, the parties agreed that the case was ready for trial, *see* Docket Item 69, and so a scheduling conference was held in this Court on May 2, 2017.

       At that scheduling conference, counsel for the plaintiff, Prathima C. Reddy, advised the Court that she was not prepared to tell the Court how long the plaintiff's direct case at trial would take or to choose a date certain for the trial. *See* Docket Item 99 at 2-3. She said that she was looking to retain co-counsel to assist at trial, and she was concerned that a potential co-counsel might not be available on the date chosen for trial. *Id.* In response, the Court advised that "we're going to pick a date certain. We're going to pick a date certain today." *Id.* at 3. But the Court noted that "we can put it out far enough that it will give you enough time to get co-counsel involved." *Id.*

The Court asked Ms. Reddy, "How much time are you going to need to get your act in order and get co-counsel?" *Id.* at 4. Ms. Reddy responded, "I would prefer that it would be in early August [2017] at the earliest." *Id.* Because of various scheduling conflicts, the attorneys and the Court determined that there were no dates in 2017 when all parties and the Court were available for trial. *Id.* at 4-6. And so the Court scheduled trial to begin on January 9, 2018, *id.*, the Tuesday of the week suggested by Ms. Reddy. *Id.* at 5-6.

The Court advised the parties that it would "carve out those two weeks" for the trial. And because the date was so far in the future—eight months after the conference and five months after the August date that Ms. Reddy initially proposed—the Court advised, "this really, really, really is cast in stone. I'm not moving it." *Id.* at 6. After Ms. Reddy acknowledged, "Okay," the Court noted that "I'm not taking excuses short of something that's pretty much life threatening." *Id.*

In November 2017, this Court issued a pretrial scheduling order. Docket Item 73. That order provided, among other things, that the plaintiff's pretrial submissions were due on December 5, 2017, about a month before trial would begin. But the plaintiff submitted nothing by that date and sought no extension. The next day, on December 6, 2017, at 9:42 a.m., this Court received an e-mail from Ms. Reddy:

> Due to two family emergencies (one occurring over the last few weeks concerning my fathers care and the other being my mother in law hospitalized for a post-stroke seizure just last night), plaintiff respectfully requests an extension until December 11, 2017 to submit pre-trial materials to the Court for the Bembo v. County of Niagara trial.
>
> Also, in light of the above issues, Phillip Dabney Esq has agreed to assist with the trial, is catching up on this file as we speak and will provide his own input in pre-trial submissions

in the next few days. I anticipate he will file a notice of appearance today.

I appreciate your consideration and apologize for any inconvenience to the court and defense counsel.

Docket Item 76 at 1-2.

Approximately two hours later, the Court received, again by e-mail, a letter from defendants' counsel, Elizabeth Bergen. In that letter, Ms. Bergen stated,

On Monday, December 4th, Plaintiff's counsel, Prathima Reddy, Esq., phoned me, asking how many days I thought I would need for my case. We agreed that we would both need approximately three to four days to present our respective proof. Ms. Reddy told me that she did not know if she would be in Buffalo for the trial and had not yet decided who would be retained as trial counsel, although she was considering Phillip Dabney, Jr., Esq. She made no mention of this Court's pretrial order requiring Plaintiff to submit numerous pretrial submissions by December 5, 2017, nor did she mention family health concerns. She did, however, ask if the County was willing to discuss settlement to avoid trial and I told her that it was not.

Yesterday afternoon, Ms. Reddy again phoned and asked if I would consent to an adjournment of the court ordered trial date, something my clients and I are unwilling to do. I questioned why she would seek to adjourn the trial when this Court expressly directed Ms. Reddy to ensure that whomever she engaged to try the matter be available on January 9, 2018, as that was a firm date for jury selection, with proof to follow. Ms. Reddy then asked if I would consent to an extension of time for Plaintiff to submit pretrial submissions, citing her father's health. I advised that I was unwilling to do so for several reasons, the most important of which is that Defendants' submissions are due one week after Plaintiff's submissions, and I have arranged my schedule accordingly to address Plaintiff's submissions from December 5, 2017 through December 11, 2017. Thereafter, I have numerous additional scheduling commitments, including, but not exclusively, preparation for this trial.

*Id.* at 2.

Later that same day, my courtroom deputy sent the following e-mail to Ms.

Reddy, with a copy to Ms. Bergen:

> Consistent with Judge Vilardo's rules as reflected on the
> Court's website, see link below, you are requested to file a
> motion seeking an enlargement of time. Your email below is
> insufficient. A letter request (not an email) may only be
> submitted if it is made at least five days before the deadline
> and if it is made with the consent of opposing counsel. Your
> email fails to satisfy either of those requirements.
> Once your motion is filed, a briefing schedule and a date for
> oral argument will be set by the Court.
>
> http://www.nywd.uscourts.gov/content/hon-lawrence-j-vilardo

*Id.* at 3.

Ms. Reddy did not file a motion for an enlargement of time nor did she file the

required pretrial submissions, but on December 8, 2017, Phillip Dabney, Jr., Esq. filed

a notice of appearance. Docket Item 74. That notice stated in part, "I appear in this

case 'of Counsel' to Prathima C. Reddy, Esq. and as counsel for Rodriguez A. Bembo,

the above-named Plaintiff in this action."

On December 12, 2017, this Court issued an order, Docket Item 76, directing

the plaintiff to show cause, in writing and no later than December 15, 2017, why this

case should not be dismissed or some other sanction imposed for the plaintiff's failure

to abide by the Court's orders. The order to show cause further provided that oral

argument was scheduled for December 21, 2017, at 12:15 p.m. Ms. Reddy neither

filed a motion for an enlargement of time nor filed the required response to this Court's

order to show cause.

In the meantime, on December 18, 2017, Mr. Dabney filed an ex parte motion to

be relieved as co-counsel, citing a recent, serious medical diagnosis in his family. Docket Item 77. The Court granted Mr. Dabney's motion the following day. Docket Item 78.

On December 20, 2017—the day before oral argument was scheduled and five days after the plaintiff's written submission was due—this Court received an e-mail with a letter attached from Ms. Reddy. While her letter offered an apology and an explanation for what she described as confusion over the Court's orders, she neither sought an enlargement of time to file the required response to the order to show cause nor asked to adjourn the oral argument date or to participate by telephone.

Counsel for defendants appeared at the scheduled oral argument on December 21, 2017. There was no appearance by or on behalf of the plaintiff. Docket Item 79. During the appearance, the Court generally adjourned the January 9, 2018 trial date and indicated that it would issue a second order to show cause.

On December 29, 2017, this Court issued another order to show cause:

> [N]o later than January 12, 2018, the plaintiff shall file a sworn affidavit, supported by medical proof and other evidence demonstrating (1) good cause for failing to timely respond to this Court's original order to show cause (Docket Item 76), and (2) why this case should not be dismissed or some other sanction imposed for plaintiff's repeated failure to abide by the Court's orders. The defendants shall respond no later than January 31, 2018. The plaintiff may reply no later than February 14, 2018. Oral argument is scheduled for February 21, 2018, at 10:00 a.m. Counsel for the parties are ordered to appear at that time unless this Court issues an order adjourning the appearance. The plaintiff is on notice that the failure to submit the required response to the order to show cause or to appear *will* result in sanctions.

Docket Item 80 (emphasis in original).

Ms. Reddy submitted her affidavit along with a motion to seal her response.[1]  As she did in her email of December 6, 2017, she largely blamed "two family emergencies." S*ee* Docket Item 80 at 1; *see also* Sealed Docket Item 81.  She attached certain medical records:  a statement for ambulance service needed for a family member on November 2, 2017; a hospital emergency room record for the same family member dated November 2, 2017; and two statements for medical services provided to another family member without dates of treatment.  *Id.* at Exhibits 1 and 2.

In her affidavit, Ms. Reddy claimed that "[f]or most of 2017," she was in California where she was caring for a family member who suffered from "diabetes, kidney failure and respiratory issues" that resulted in periodic ICU admissions and repeated hospitalizations and that required "almost 24 hour in home care, with at least a family member."  Sealed Docket Item 81 at 2.   Because only one other family member was available, Ms. Reddy remained in California to "assist in whatever way I can."  *Id.*  The

---

[1] The plaintiff's submission was due on January 12, 2018.  On that date, the plaintiff filed a motion to seal her submission.  Docket Item 82.  On January 14, 2018, this Court issued a text order requiring the plaintiff "to hand deliver to Chambers by no later than 4:00 p.m. on 1/16/2018 a copy of the proposed response [Docket Item 81, which had not yet been filed] and all attachments."  Docket Item 83.  But at 4:25 p.m. on January 16, 2018, after the expiration of the 4:00 p.m. deadline, Ms. Reddy emailed this Court's Deputy Clerk advising that she had faxed her affidavit and had arranged for a hand delivery the next morning.  Ms. Reddy never asked for permission to fax instead of hand deliver as the Court's order required or for an extension of time for the hand delivery the next morning.  Because this failure to meet a deadline set by the Court is somewhat trivial, the Court deals with it in a footnote.  But it is further evidence of Ms. Reddy's practice of treating court orders as something less than compulsory.  And given that this submission dealt with threatened sanctions for missing deadlines, it provides a good example of why a sanction is indeed necessary to get the Court's message across to Ms. Reddy.

situation came to a head "on November 2, 2017 . . . when we called the 911 and the Alameda Fire Department," apparently resulting in the ambulance bill submitted as an exhibit. *Id.* & Exhibit 1. According to Ms. Reddy, her family member "was admitted, kept in ICU for several days, monitored for several days and then released." *Id.* at 2. While at home, the family member continued to need almost constant assistance as noted above. *Id.*

Back in Buffalo, another relative had medical issues in December 2017. This family member had suffered a stroke in 2016. *Id.* She gradually improved, but in December 2017 "suffered a heartbreaking seizure." *Id.* Ms. Reddy claims that this occurred just as she was "preparing to turn over the task of pre-trial submissions" to another attorney who told her that he "would conform the documents to his strategy, ask for an extension and otherwise take over trial matters." *Id.*

Ms. Reddy also explained that she "delayed in responding to the Court's First Order to Show Cause" because she believed another attorney had taken over the case and "did not realize that the First Order to Show Cause was directed to her." *Id.* at 3. She apologized "profusely" if her actions were "perceived as neglecting the Court's orders." *Id.*

On January 30, 2018, defendants' counsel responded to the order to show cause. Docket Item 84. She said that the day before the plaintiff's pretrial submissions were due, Ms. Reddy contacted her to discuss the trial. *Id.* at 2. During that conversation, Ms. Reddy said that she did not know whether she would be in Buffalo for the trial; in fact, Ms. Reddy said that she had not yet even decided who to retain as trial counsel. *Id.* Later the same day, Ms. Reddy called defense counsel again, this time asking to

7

adjourn the trial date. *Id.* When defense counsel declined to consent to an adjournment and pointed out that the Court had set January 9 as a firm trial date, Ms. Reddy asked for an extension of time to file her pretrial submissions. *Id.* Defense counsel again declined to consent, primarily because she had rearranged her schedule so that she would have time to address the plaintiff's submissions in the week between their respective due dates. *Id.*; *see also* Docket Item 76 at 2; *supra* at 3.

On February 21, 2018, the Court held the scheduled show-cause hearing. Docket Item 86 (erroneously dated February 21, 20*17*). Again, Ms. Reddy did not appear. Instead, she sent attorney Joshua E. Dubs of Joshua E. Dubs, PLLC, to appear on her behalf. *Id.* Mr. Dubs had not submitted a notice of appearance in this case but appeared "of counsel" to Ms. Reddy, *id.*, despite the fact that the Court had ordered "[c]ounsel for the parties" to appear and despite the fact that the hearing would address "why this case should not be dismissed or some other sanction imposed for plaintiff's repeated failure to abide by this Court's orders." Docket Item 80 at 4-5. Indeed, the Court had expressly warned the plaintiff that "the failure . . . to appear *will* result in sanctions." *Id.* at 5 (emphasis in original).

At the hearing on February 21, the Court expressed its amazement at Ms. Reddy's failure to appear. The Court detailed the chronology of Ms. Reddy's violations of Court orders, including the Court's setting a firm trial date many months in the future; Ms. Reddy's failure to submit pretrial submissions by the due date without requesting any extension; her failure to appear on December 21 as required; her late response to the second order to show cause; and her failure to appear as ordered on February 21. Docket Item 86 at 4-6. The Court noted that the defendants had cited examples of Ms.

Reddy's similar conduct in other cases and had requested dismissal of the case as a sanction. *Id.* at 6. And the Court then said to Mr. Dubs (who was covering for Ms. Reddy):

> I'll tell you, I'm at a loss. I'm at a loss. So you're in a tough position. I feel badly for you that you're here in this tough position. But tell me why I shouldn't dismiss this case …. [I]f it just affected Ms. Reddy, I'd dismiss this case in a heartbeat, I think. But it doesn't just affect her, it affects her client.

*Id.* at 6-7.

In response, Mr. Dubs noted that the trial counsel retained by Ms. Reddy had to bow out and that in early January 2018, Ms. Reddy "diligently attempt[ed] to find trial counsel." *Id.* at 8. As an explanation of why Ms. Reddy had not met the Court's deadlines, Mr. Dubs cited "the illnesses in her family. The illnesses of [the family of] counsel that she got to replace her." *Id.* at 9. Mr. Dubs also cited "serious pregnancy complications" that Ms. Reddy suffered, but he did not provide details. *Id.* at 10-11.

After hearing from counsel for the defendant, the Court ruled. The Court declined to dismiss the case but warned Ms. Reddy that any further violations of court orders might well result in dismissal. The Court ordered Ms. Reddy to pay the costs of defense counsel in connection with the orders to show cause and related appearances. *Id.* at 13-24. And the Court advised that it would consider other sanctions imposed personally against Ms. Reddy. *Id.* at 14.

The Court also gave Ms. Reddy 30 days to find trial counsel for the case. *Id.* And the Court scheduled an appearance on March 20, 2018, for both Ms. Reddy and any trial counsel: "I want Ms. Reddy here and counsel who is being substituted for her. I

want them both here." *Id.* at 16. The Court also issued a text order directing "Prathima Reddy . . . to appear in person at the 3/20/2018 status conference." Docket Item 85.

The day before the scheduled appearance—March 19, 2018—there was a flurry of activity in the case. First, defense counsel filed a letter to the Court advising that the case had been settled. Docket Item 87. That letter also advised the Court that in light of the settlement, her clients were willing to waive any sanctions payable to them and that defense counsel did not object to the plaintiff's request to adjourn the appearance scheduled for the next day. *Id.*

The Court treated defense counsel's letter as a request to adjourn the status conference scheduled for the next day and denied that request; in a text order, the Court further explicitly advised that "plaintiff's counsel, Prathima Reddy, Esq., IS TO APPEAR IN PERSON AT THE 3/20/2018 status conference." Docket Item 88 (capital letters in original). Later, the Court issued a second text order, treating an email from Ms. Reddy requesting an adjournment of the status conference as a motion to adjourn and denying the motion. Docket Item 89. In that text order, the Court advised that the "settlement does not preclude or affect the Court's order of sanctions against plaintiff's counsel." *Id.* And the Court repeated that "counsel for the parties shall appear IN PERSON as scheduled" the next day. *Id.*

Ms. Reddy then filed a motion to adjourn the conference with a supporting "In Camera Declaration." Docket Items 90, 91. Her declaration noted that the case had been settled, that she had now permanently relocated to California, and that she had family issues requiring her presence there. Docket Item 91 at 1-2. She noted that it was her "understanding" that the defendants "could waive any costs allowed by the Court or

submit a nominal request to the Court; that the conference scheduled" the next day was therefore "unnecessary"; and that any request for costs could be handled as "a separate issue." *Id.* at 2-3.

The Court denied the motion. Because Ms. Reddy was in California without plans to travel to Buffalo in time for the conference, however, and because by this time her appearance in person the next day was virtually impossible, the Court permitted the parties to appear by phone. Docket Item 92. Later that same day, counsel for defendant submitted the requested statement of costs, documenting $11,478.50 in attorney fees incurred in connection with the orders to show cause. Docket Item 93 at 4. That submission repeated the defendants' willingness to forgo any sanctions now that the case had been settled. *See id.* at 2-3. Defense counsel also submitted the requested memorandum of law addressing alternative sanctions the Court could impose, including "fines, . . . contempt citations, disqualifications or suspension of counsel," among others. Docket Item 93-2.

At the telephone conference the next day, the Court set a deadline of April 24, 2018, for the plaintiff to make any submission on the issue of sanctions. On April 25, 2018, a day after the deadline, Ms. Reddy emailed a response to chambers. *See* Docket Item 96. On April 26, 2018, two days after the deadline, Ms. Reddy moved to file her response under seal. Docket Item 95. The same day, the Court granted the motion. Docket Item 96. The next day, the Court filed Ms. Reddy's undated letter with attachments under seal. Docket Item 97.

In her most recent response, Ms. Reddy cites a host of reasons why the Court should not impose sanctions: her pregnancy-related health complications in 2016; her

difficulties as a sole practitioner; her inability to travel because of family health issues; specific incidents regarding the health of family members; problems communicating with her client who was incarcerated; her "vacillat[ion]" about whether she should try this case herself or whether someone else should try it. Docket Item 97. But none of these excuses explain why she failed to meet a deadline for pretrial submissions on December 5, 2017, especially when she had known since May that a trial date had been "cast in stone" for early January 2018. Nor do they explain her other missed deadlines, failures to appear, or general disregard for court orders. And given that behavior, her professed "deference to the beloved judges of the Western District of New York and court deadlines" rings hollow. Sealed Docket Item 97 at 1.[2]

The timeline here demonstrates that Ms. Reddy's excuses cannot explain her dereliction. Ms. Reddy knew about her issues as a sole practitioner long before the May 2017 conference when the trial date was set. Her pregnancy-related health complications—and, thankfully, the healthy birth of her child—occurred in 2016, again long before the trial date was set. Once the trial date was set, Ms. Reddy had seven months before her pretrial submissions would be due—more than twice the time she first requested. That gave her more than enough time to hire trial counsel, communicate with her client, and plan around unanticipated family health issues.

---

[2] In this Decision and Order, the Court has attempted to respect the privacy of Ms. Reddy's family members—the reason certain submissions were sealed. Therefore, the Court has not referred to these family members by name or by a more specific description than necessary. And when the Court has quoted a sealed document, it has quoted only language that includes no personally identifiable information.

The specific episodes Ms. Reddy points to provide no explanation, either. One family member's emergency room visit and subsequent hospitalization occurred on November 2, 2017—before the order setting pretrial deadlines was even issued and more than a month before the submissions would be due. That gave her ample time at least to request an extension well in advance of the deadline. The other family member's health incident occurred "[o]n the evening of December 5, 2017"—the day those submissions were due and thus after she had already missed the deadline. So none of this explains why Ms. Reddy did not address the Court's deadlines during November 2017 or why she could not prepare the pretrial submissions between May and December 2017.

The fact that Ms. Reddy had apparently arranged for a trial attorney to handle the case on November 30, 2017—five days before her submissions were due—does not let her off the hook.[3] She was counsel of record, and the responsibility of making those submissions remained with her. Defense counsel had arranged her schedule to respond to those submissions. The Court had carved the trial dates out of its calendar. But because of Ms. Reddy's failure to abide by court orders—or to retain other counsel far

---

[3] On the contrary, the fact that Ms. Reddy did not engage Mr. Dabney until late November suggests she knew very well that the plaintiff would not be able to make pretrial submissions by the December 5 deadline. Their email exchange on November 30, 2017, and December 1, 2017, hardly discussed details and does not even suggest Mr. Dabney's readiness to handle the matter. Docket Item 97 at 8. And Ms. Reddy still contemplated helping with pre-trial submissions. Ms. Reddy could not reasonably dump trial preparation on which she had seven months to work in Mr. Dabney's lap and expect him to meet the deadline for pretrial submissions in less than a week. Further, Mr. Dabney's brief involvement cannot excuse Ms. Reddy's subsequent failures to meet the Court's deadlines.

enough in advance of trial so that other counsel could meet the deadlines—the Court and opposing counsel had to rearrange their schedules to meet hers.

Ms. Reddy's phone call to opposing counsel the day before her submissions were due speaks volumes. She did not explain any family issues and ask for help. Instead, she raised the possibility of settlement, asked about how long trial would last, and said that she had not yet decided on a trial attorney but had one under consideration. *See* Docket Item 76 at 2. By that time, Ms. Reddy must have known that her pretrial submissions would not be made by the December 5 deadline, but she did not say a word about that to opposing counsel. Nor did she contact the Court. The next day, Ms. Reddy asked opposing counsel to adjourn the trial date. *Id.* But still she did nothing to request relief from the Court's deadlines.

In fact, none of Ms. Reddy's excuses say anything about why she did not email, write, call, or—more appropriately—make a motion to adjourn any deadlines or appearances. Her failure to do so unilaterally required the Court either to dismiss her client's case or to adjourn the trial date that was "cast in stone" many months earlier. Her failures required two orders to show cause and several court appearances, almost all of which she missed. Indeed, even after the Court issued two text orders requiring— in bold, italics, or all caps—her appearance, she did not request relief from those orders until the day before when she was across the country and her attendance was virtually impossible.

What is more, this case is not the only one in this district in which Ms. Reddy has demonstrated her flippant attitude toward federal court orders. Indeed, defense counsel swore that they had "identified numerous cases brought by Ms. Reddy" in this district

"where she failed to comply with Court ordered deadlines and repeatedly sought extensions of various scheduling orders." Docket Item 84 at 5. As examples, counsel referred to *Banuna v. Tyson Foods, Inc.*, Case Management Order, Docket Item 31 (No. 14-CV-140), (W.D.N.Y. Dec. 11, 2015) in which Magistrate Judge Hugh B. Scott noted his frustration with Ms. Reddy's tactics. *See* Docket Item 84-3 at 6. Likewise, in language especially appropriate here, Magistrate Judge Jonathan W. Feldman noted that despite being ordered to appear in person, Ms. Reddy failed to do so based on "frequent excuses for why she cannot appear in court." He also noted several violations of court orders and concluded that "the Court will no longer adhere to Ms. Reddy's schedule." Docket Item 84-4 at 2-3, (*De Magalhaes v. Rochester Institute of Technology*, Order re: Motion to Compel, Docket Item 71 (No. 13-cv-6620) (W.D.N.Y. Oct. 30, 2017)); *see also* Docket Item 84-4 at 5-9; Docket Item 84-5 (counsel declaration regarding chronic similar issues with Ms. Reddy). Such dilatory conduct is precisely the type of persistent, abusive litigation tactics that warrant sanctions.

This Court has tremendous sympathy for anyone responsible for the care of children or elderly relatives. And this Court is reluctant ever to sanction counsel— especially sole or small firm practitioners, with whose challenges and responsibilities the Court is intimately familiar. But it is counsel's responsibility to bring these challenges to the Court's attention and request assistance *before* violating its orders. There comes a point when repeated violations of court orders must be addressed and a message must be sent to "deter improper behavior." *Universitas Educ., L.L.C. v. Nova Group, Inc.*, 784 F.3d 99, 103 (2d Cir. 2015). In this Court's view, that point has long passed here.

For the reasons stated above, this Court sanctions Ms. Reddy in the amount of $11,478.50. Because the defendants have agreed to forgo costs in connection with the settlement, Ms. Reddy is fined that amount and shall pay it directly into the Court.[4] While defendants are free to waive their claim to costs, this Court will not permit Ms. Reddy to avoid its sanctions—which were imposed because of her continued violations and to deter future violations—through settlement.[5]  "The public interest in having rules of procedure obeyed is at least as important as the public interest in encouraging settlement of disputes."  *Keller v. Mobil Corp.*, 55 F.3d 94, 98 (2d Cir. 1995).  Ms. Reddy strung the Court along for months, refusing to obey its orders and rules.  Repeatedly treating court orders as aspirational, not compulsory, amply justifies this sanction.

Moreover, even if the parties' settlement had been conditioned upon the Court's vacating its order of sanctions, that would not have tied the Court's hands.  *See Keller*, 55 F.3d at 99 ("[T]]here is no question that despite the parties' agreement to ask for the withdrawal of the sanction order as a condition to settlement, the district court had the power to preserve a sanction already imposed. . . ."); *One Beacon Ins. Co. v. Old*

---

[4] This modification reflects the fact that the purpose of sanctions is to "deter rather than to compensate" and that monetary sanctions "should ordinarily be paid into the court as a penalty."  *Universitas Educ., L.L.C.*, 784 F.3d at 103 (quoting Fed. R. Civ. P. 11(c) advisory committee's note to the 1993 amendments).

[5] When the Court first learned of the settlement and that it included an agreement by the defendants to forgo the costs and attorney fees that the Court had ordered as a sanction, it was concerned that counsel might be settling the case to avoid sanctions. Any concern in that regard has been ameliorated in light of (1) the text order of March 19, 2018, explicitly advising the parties and their attorneys that the "settlement does not preclude or affect the Court's order of sanctions against plaintiff's counsel," and (2) the fact that the stipulation of discontinuance finalizing the settlement was not signed or filed until *after the* Court gave that explicit notice.

*Williamsburg Candle Corp.*, 2008 WL 530200 (S.D.N.Y. Feb. 22, 2007) ("I would not be obliged to vacate the orders even if the settlement were contingent upon my doing so."). While "*generally* . . . a plaintiff's filing in the district court of a stipulation of dismissal signed by all parties pursuant to Rule 41(a)(1)(ii) divests the court of its jurisdiction over a case . . . it simply does not follow [that this] divests a court of jurisdiction . . . to modify or vacate its own . . . orders." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 139–40 (2d Cir. 2004) (emphasis added). The settlement of this case therefore does not prevent the Court from modifying its order of sanctions against Ms. Reddy to impose a specific dollar amount payable directly into the Court.

This order should come as no surprise to anyone since the Court stated in its March 19, 2018 text order that the settlement would not affect the Court's imposition of sanctions on Ms. Reddy. Docket Item 89. The stipulation settling the case was signed on April 12, 2018, almost a month after the Court's notice, and was filed on August 10, 2018, almost four months after that. *See id.* The Court therefore is "so ordering" the settlement simultaneously with the issuance of this Decision and Order.

Therefore, for the reasons stated above, the parties' stipulation of dismissal is SO ORDERED. No later than October 15, 2018, counsel for the plaintiff, Prathima C. Reddy, shall pay sanctions in the amount of $11,478.50 to the Clerk of Court, and the Clerk of Court shall then close the file.

SO ORDERED.

Dated:      September 5, 2018
             Buffalo, New York

                           *s/ Lawrence J. Vilardo*
                           LAWRENCE J. VILARDO
                           UNITED STATES DISTRICT JUDGE